**PADUANO & WEINTRAUB LLP**
GENE WILLIAMS, SB# 211390
E-Mail: gw@pwlawyers.com
1901 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 662-9200

**PADUANO & WEINTRAUB LLP**
Leonard Weintraub (NY Bar No. 2161479)
(*Pro Hac Vice* application forthcoming)
E-Mail: lw@pwlawyers.com
Guilherme Duraes (NY Bar No. 5664420)
(*Pro Hac Vice* application forthcoming)
E-Mail: gd@pwlayers.com
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100

Attorneys for Plaintiff
THE HONEY BAKED HAM COMPANY, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

THE HONEY BAKED HAM COMPANY, LLC, a Delaware limited liability company,

Plaintiff,

v.

AMY RODRIGUEZ, an individual,

Defendant.

Case No. '26CV4955 BTM DDL

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Honey Baked Ham Company, LLC ("HBH") hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment that HBH has not violated the rights of Defendant Amy Rodriguez ("Rodriguez") under federal wiretapping laws or state-law equivalents.

2. HBH also seeks a declaratory judgment that there is no binding arbitration agreement between the parties and that HBH is not required to arbitrate the case that Rodriguez commenced before JAMS on July 16, 2026, captioned Rodriguez, Amy vs. The Honey Baked Ham Company, Reference Number 1240025898 (JAMS) (the "Arbitration"). HBH also seeks an injunction against Rodriguez proceeding with the Arbitration.

## PARTIES

3. Plaintiff HBH is a Delaware limited liability company headquartered in Georgia. HBH is engaged in the business of selling and catering certain food products, including hams, turkey, sides, and desserts.

4. Defendant Rodriguez is an individual residing in San Diego County, California.

## JURISDICTION AND VENUE

5. This is an action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure, seeking a declaration of rights and/or other legal relations of the parties to this litigation with respect to a substantial controversy arising under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*.

6. This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 2510 *et seq.*, 28 U.S.C. § 1331, and 28 U.S.C. § 2201. The Court has supplemental jurisdiction over the non-federal claims.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is domiciled in this District.

## BACKGROUND

### I. The Arbitration

8. On April 13, 2026, Rodriguez served an arbitration demand on HBH (the "Arbitration Demand"), asserting certain claims related to her use of HBH's commercial website, www.honeybaked.com (the "Website"). Among other things, the Website allows individuals to browse and purchase food products, find store locations, create and manage accounts, and perform other retail shopping functions. (A true and correct copy of the Arbitration Demand is attached hereto as Exhibit 1.).

9. In the Arbitration Demand, Rodriguez alleges that she visited the Website from her home state of California; no specific date is provided. She claims that HBH had embedded certain software tools (collectively referred to herein as "Pixels") into the Website's source code and that the Pixels collected certain data from her device, "including device identifiers, geographic information, IP addressing information, URL tracking, pages viewed, and buttons clicked." See Exhibit 1 at 1. According to Rodriguez, this data was then shared with certain technology companies without her knowledge or consent.

10. The information allegedly shared (such as Rodriguez's IP address and pages viewed on HBH's Website) is general in nature. There is no contention that HBH shared sensitive information such as private financial records or highly personal information.

11. Rodriguez also generally asserts that, once executed, software tools like the Pixels "monitor and record various user interactions, including keystrokes (such as data entered into form fields), mouse clicks, movements, scrolling activity, page navigation, and form submissions," and "capture session metadata (e.g., browser type, operating system, session IDs) and network communications (e.g., HTTP requests

made while navigating the website)." Id. at 4. However, Rodriguez does not claim that HBH's purported Pixels recorded or shared this type of information with respect to her in particular.

12. Rodriguez asserts six causes of action against HBH in the Arbitration Demand: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq*. ("ECPA"); (2) violation of the California Invasion of Privacy Act, Cal. Penal Code § 638.51 ("CIPA"); (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); (4) intrusion upon seclusion; (5) unjust enrichment; and (6) negligence. Id. at 1.

13. On July 16, 2026, JAMS notified HBH that the Arbitration had commenced.

## II. HBH and Rodriguez Did Not Agree to Arbitrate

14. In the Arbitration Demand, Rodriguez claims that HBH's Terms of Use (the "Terms of Use") mandate that her claims be resolved in arbitration. See Exhibit 1 at 1, 2.

15. However, no agreement to arbitrate was ever formed between Rodriguez and HBH in particular.

## III. HBH's Website Disclosed that User Data Could Be Shared

16. HBH's Privacy Policy expressly discloses that HBH may collect and share user data, describes the type of data in question, and explains how that data may be used, including that HBH may share it with third parties. (A true and correct copy of the Privacy Policy is attached hereto as Exhibit 2.).

17. The Policy describes the personal information that HBH collects from Website users as follows:

> **1. What Personal Information We Collect**
>
> We collect Personal Information that you voluntarily provide to us through the Website, when you order our products, and when you make purchases at our brick-and-mortar stores. ***This includes but may not be limited to your***

> ***first and last names, company name, email address and password, mailing address, phone number, demographic information, purchase history, geolocation information (on our app, we'll only collect this with your permission and to provide services), and payment information***. We may use third-party providers to update and correct your Personal Information to ensure that your Personal Information that we store is accurate and complete. . . . If you are a recipient of one of our products, we collect your name and ***delivery address***, as provided to us by the person who ordered the product.
>
> ***We also automatically collect certain technical information from your electronic device when you access the Website, as further described below***.

Exhibit 2 at 1 (emphasis added).

18. The Privacy Policy then explains that the Website uses "cookies" to collect additional technical and personal information from users:

> […] **Cookies**
>
> When you access the Website, we and our third-party providers may place files known as "cookies" on your device, along with similar industry standard technologies like pixels or java scripts, to serve ads and/or collect data, including Personal Information, across the Internet and sometimes on our Website. ***Some cookies allow us and our third-party providers to store your preferences, including your selected U.S. state of residence, and including, but not limited to log-in information, and ordering and shipping information***. Please keep in mind that some cookies may persist after you have logged into your account on the Website***. Other cookies allow us and our third-party providers to passively gather certain information about your use of our Website***, which may include gathering information for the following purposes: statistics collection and analysis, Website optimization, analytics (as described below), and market research. ***We and our third-party providers may collect Personal Information that may include your Internet Protocol (IP) address, the operating system type used by your electronic device, browser type, user agent, email address (where hashed or otherwise rendered pseudonymous) and other user and device level pseudonymous information, and the address of a referring website, if any. Some of these service providers may be able to collect Personal Information that you share with this Website via a web form automatically and prior to your pressing a submit button; and they may be able to use***

> ***information from your visits to this Website to send marketing messages to you in a way that may personally identify you. Our providers may do this even if you're not logged into your account***. If you would like more information about these practices, please click: http://optout.aboutads.info/#!/. We collect this Personal Information to improve the quality of your visit to our Website, for security purposes, including for authentication, to facilitate Website navigation and to personalize your experience while visiting the Website.
>
> If you choose not to accept certain cookies, you may not have access to certain features of our Website. Your browser may be configured to reject cookies or notify you when a cookie is set.
>
> Your browser settings may not permit you to control the technologies utilized by these third-party companies.

Exhibit 2 at 1 (emphasis added).

19. Additionally, HBH's Privacy Policy states that HBH may use Google Analytics to collect users' personal information:

> **Google Analytics**
>
> The Website may use Google Analytics, a web analysis service provided by Google, in order to better understand your use of our Website and how we can improve it. Google Analytics collects ***Personal Information such as how often users visit a website, what pages you visit when you do so, and what other websites you used prior to coming to such website***. Google Analytics collects only the IP address assigned to you on the date you visit a website, rather than your name or other identifying information. We do not combine the information collected through the use of Google Analytics with your Personal Information. Although Google Analytics plants a permanent cookie on your web browser to identify you as a unique user the next time you visit a website, the cookie cannot be used by anyone but Google. Google's ability to use and share information collected by Google Analytics about your visits to the Website is restricted by the Google Analytics Terms of Service and the Google Privacy Policy. Google utilizes the information collected to track and examine the use of the Website, to prepare reports on its activities and share them with other Google services. To more fully understand how Google may use the information it collects on the Website, please review "How Google uses information from sites or apps that use our services" (located here).

Exhibit 2 at 2 (emphasis added).

20. Next, HBH's Privacy Policy further explains how Website users' personal information may be used and shared:

> […] **2. How We Use Your Personal Information**
>
> We and our third-party providers may collect and use Personal Information to operate the Website and deliver products, including to provide certain services and improve the user experience, help you find a store, address Website integrity or security issues, conduct research and analysis to maintain, protect, develop, improve and market our products, services, and the Website, and for any other lawful purposes.
>
> We may also use your Personal Information to send you push notifications, promotional materials and administer our rewards program(s).
>
> […] **3. How We Share Your Personal Information**
>
> We may share all of the categories of your Personal Information that we collect as permitted or required by applicable legal requirements. We engage third-party providers who may collect or receive your Personal Information on our behalf, and we require such third parties to comply with the same or similar standards that we apply to protect Personal Information. Such third-party providers perform functions such as payment processing, operating and supporting the Website, analyzing data, or performing marketing or consulting services.

Exhibit 2 at 2-3.

21. The data that HBH allegedly collected and shared – *i.e.*, Rodriguez's "device identifiers, geographic information, IP addressing information, URL tracking, pages viewed, and buttons clicked" – is clearly disclosed in the Privacy Policy.[1]

---

[1] As shown above, the Policy discusses "device identifiers" ("the operating system type used by your electronic device, browser type, user agent, email address (where hashed or otherwise rendered pseudonymous) and other user and device level pseudonymous information"); "geographic information" ("geolocation information"); "IP addressing information" ("your Internet Protocol (IP) address"); "URL tracking" and "pages viewed" ("the address of a referring website" and "information from your visits to this Website"); and "buttons clicked" ("Personal Information that you share with this Website via a web form automatically and prior to your pressing a submit button"). These items are bolded in the excerpts of HBH's Privacy Policy quoted above.

22. Accordingly, Rodriguez's contention that "[HBH's] Privacy Policy and Terms and Conditions failed to disclose the use of this invasive tracking technology" is demonstrably false. See Exhibit 1 at 5. To the contrary, the fulsome disclosures in the Privacy Policy cannot be squared with Rodriguez's claim that her personal data was shared with technology companies "without [her] knowledge or consent." See Exhibit 1 at 1.

## IV. Rodriguez Has Not Suffered an Injury in Fact

23. In order to have standing to advance or defend a particular legal interest, a litigant must demonstrate that it has suffered an injury in fact, that is, an invasion of a legally protected interest that is concrete and particularized. That is the case even in the context of statutory claims.

24. Rodriguez has not suffered a privacy injury because the type of information at issue here – "device identifiers, geographic information, IP addressing information, URL tracking, pages viewed, and buttons clicked" – is not subject to a protectable expectation of privacy.

25. Rodriguez has also not suffered an actionable economic injury based on unjust enrichment, as the absence of a privacy injury means that any profit earned from the data at issue cannot have been unjust.

## V. HBH Has Not Violated Rodriguez's Rights under Federal or State Law

26. The absence of an injury in fact means that Rodriguez cannot recover any damages or other legal remedies from HBH. At any rate, Rodriguez also fails to meet elements of each of her causes of action, and such failure provides additional, independent reasons why she is not entitled to any relief.

### A. The Electronic Communications Privacy Act

27. The ECPA, 18 U.S.C. § 2511(1), makes it unlawful for any person to intentionally intercept any wire, oral, or electronic communication, or to use or

disclose the contents of any intentionally intercepted communication. Here, Rodriguez's ECPA claim is meritless for two reasons. First, there is no contemporaneous interception as required under the ECPA. Second, even if Rodriguez could show contemporaneous interception, HBH was a party to Rodriguez's communications with the Website and is therefore exempt under the ECPA.

***1. No Contemporaneous Interception***

28. For liability to attach under the ECPA, a communication must be acquired during transmission, not while it is in electronic storage. Given the speed of internet communications, it is virtually impossible for these communications to be contemporaneously intercepted under the meaning of the ECPA. Instead, destination servers receive and store communications before there is any time for contemporaneous interception.

29. Rodriguez attempts to escape this fundamental truth of internet communications by alleging that the Pixels intercept communications in transit because they "not only capture user data but contemporaneously transmit it to the Technology Company's servers for continuous analysis and storage." See Exhibit 1 at 4. However, embedded in Rodriguez's own assertion is an acknowledgment that the destination server (here, HBH's Website) receives/captures the communication and then, presumably as soon as the information is received/stored, transmits it to the third party (the "Technology Companies"). There is no contention that the technology companies access the communications before they reach the Website. Accordingly, there is no contemporaneous interception under the ECPA.

***2. HBH was a Party to the Communications***

30. Under the ECPA, it is not unlawful for a person to intercept an electronic communication "where such person is a party to the communication," so long as the interception is not "for the purpose of committing any criminal or tortious act." 18

U.S.C. § 2511(2)(d). Here, HBH was a party to Rodriguez's communications with the Website. Therefore, even if Rodriguez could show that HBH intercepted her electronic communications while in transit (which she cannot), HBH would still not be liable under the ECPA because it was a party to the relevant communications.

31. Nor can HBH be liable under the ECPA's "crime/tort exception." The crime/tort exception is inapplicable when the alleged violator uses the communications for its own commercial purposes, and Rodriguez acknowledges that any alleged collection and disclosure was made "for the purpose of harvesting data for commercial gain." See Exhibit 1 at 4.

### B. The California Invasion of Privacy Act

32. Section 638.51(a) of CIPA provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order."

33. Internet technologies like the Pixels are not pen register or trap and trace devices and therefore are not proscribed by CIPA.

34. Further, trap and trace devices by definition capture identifying information about a communication, not the contents of a communication. Accordingly, to the extent that Rodriguez's allegations are focused on the collection and disclosure of the "contents" of her communications, this is an additional, independent reason why her CIPA claim lacks merit.

### C. The California Unfair Competition Law

35. To bring a UCL claim, a plaintiff must establish a quantifiable loss or deprivation of money or property (*i.e.*, an economic injury) that was the result of or caused by the unfair business practice or false advertising at issue.

36. Rodriguez alleges only that she "suffered an invasion of privacy and a loss of control over [her] personal information." See Exhibit 1 at 5. She offers no allegations about the economic value of her purportedly disclosed data, and therefore she cannot sustain a claim of unjust enrichment.

### D. Intrusion upon Seclusion

37. A claim for intrusion upon seclusion requires an intentional interference with a person's interest in seclusion or privacy, of a kind that would be highly offensive to a reasonable person.

38. As discussed above, there is no injury for intrusion upon seclusion because there is no interference with a protectable expectation of privacy.

39. In addition, and relatedly, even if Rodriguez's "device identifiers, geographic information, IP addressing information, URL tracking, pages viewed, and buttons clicked" were subject to a protected privacy interest, disclosure of such information is not considered "highly offensive."

40. Rodriguez broadly asserts that the purported disclosure violated her "legally protected interests in safeguarding the confidentiality of [her] sensitive personal and financial information, as well as the fundamental right to conduct personal affairs without unwarranted observation, intrusion, or interference." Exhibit 1 at 1. But she does not allege any facts supporting these conclusory statements. For instance, there is no contention that HBH has disclosed embarrassing, invasive, or sensitive personal or financial information. Without more, Rodriguez fails to satisfy the "highly offensive" element of intrusion upon seclusion.

41. Lastly, Rodriguez acknowledges that she voluntarily provided data to HBH by accessing the Website. See Exhibit 1 at 4 (stating that Rodriguez "[v]isited Respondent's website from their home state" and "provided this information"). That admission provides an additional, independent reason why Rodriguez's intrusion upon seclusion claim lacks merit.

### E. Unjust Enrichment

42. As discussed above, there is also no injury under an unjust enrichment claim because any profit derived from data that is not subject to a recognized privacy interest cannot be considered unjust.

43. Moreover, a litigant must establish that she lacks an adequate remedy at law before securing equitable restitution for unjust enrichment. Rodriguez cannot explain why or how a remedy at law would be inadequate.

44. Lastly, to the extent that Rodriguez's other causes of action fail, there can be no unjust enrichment.

### F. Negligence

45. Under California law, a negligence claim requires (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury. Rodriguez's allegations do not meet the elements of a negligence claim.

46. Nowhere in the Arbitration Demand does Rodriguez explain what duty HBH owed her. HBH's Privacy Policy expressly discloses that HBH may collect and share information of the type at issue here. These provisions clearly eliminate any legal duty or liability for negligence on HBH's part.

47. In addition, as discussed above, there is no cognizable injury, and therefore Rodriguez cannot show an appreciable, nonspeculative, present injury as required for a negligence claim.

## COUNT ONE

## Declaratory Relief: No Agreement to Arbitrate

48. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

49. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether they have agreed to submit their disputes to arbitration.

50. HBH seeks a judicial declaration and determination that there is no agreement between itself and Rodriguez to submit any dispute to arbitration, JAMS

does not have jurisdiction over any dispute between Rodriguez and HBH, and HBH will not be bound by any award in the Arbitration.

**COUNT TWO**

**<u>Declaratory Relief: No Cognizable Injury</u>**

51. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

52. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether HBH has caused Defendant an injury in fact that is concrete and particularized and that can be addressed and remedied in court.

53. HBH seeks a judicial declaration and determination that HBH has not caused Rodriguez to suffer an injury in fact, and that Rodriguez cannot recover any damages or other legal remedies from HBH.

**COUNT THREE**

**<u>Declaratory Relief: No Violation of the ECPA</u>**

54. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

55. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether Plaintiff has violated the ECPA and is liable to Defendant for damages.

56. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for any violation of the ECPA. In particular, HBH is not liable to Rodriguez for any violation of the ECPA because (i) Rodriguez has not suffered a cognizable injury entitling her to damages; and/or (ii) Rodriguez consented to the

alleged collection and disclosure of the information at issue; and/or (iii) HBH's alleged conduct does not constitute interception of electronic communications under the ECPA; and/or (iv) to the extent that HBH's alleged conduct constituted interception, HBH was a party to the alleged communications and therefore cannot be liable under the ECPA; and/or (v) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

## COUNT FOUR

## Declaratory Relief: No Violation of CIPA

57. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

58. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether Plaintiff has violated CIPA and is liable to Defendant for damages.

59. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for any violation of CIPA. In particular, HBH is not liable to Rodriguez for any violation of CIPA because (i) Rodriguez has not suffered a cognizable injury entitling her to damages; and/or (ii) the Pixels are not cognizable pen register or trap and trace devices under CIPA; and/or (iii) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

## COUNT FIVE

## Declaratory Relief: No Violation of the UCL

60. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

///

61. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether Plaintiff has violated the UCL and is liable to Defendant for damages.

62. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for any violation of the UCL. In particular, HBH is not liable to Rodriguez for any violation of the UCL because (i) HBH did not cause Rodriguez to suffer a cognizable injury under the UCL; and/or (ii) Rodriguez consented to the alleged collection and disclosure of the information at issue; and/or (iii) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

## COUNT SIX

## Declaratory Relief: No Liability for Intrusion upon Seclusion

63. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

64. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether Plaintiff owes Defendant damages for the tort of intrusion upon seclusion.

65. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for intrusion upon seclusion. In particular, HBH is not liable to Rodriguez for intrusion upon seclusion because (i) Rodriguez has not suffered a cognizable injury entitling her to damages; and/or (ii) Rodriguez voluntarily provided the alleged information to HBH; and/or (iii) the alleged disclosure of the information at issue does not constitute highly offensive conduct; and/or (iv) Rodriguez consented

to the alleged collection and disclosure of the information at issue; and/or (v) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

## COUNT SEVEN

## Declaratory Relief: No Liability for Unjust Enrichment

66. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

67. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and Defendant as to whether Plaintiff is liable to Defendant for unjust enrichment.

68. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for unjust enrichment. In particular, HBH is not liable to Rodriguez for unjust enrichment because (i) Rodriguez has not suffered a cognizable injury entitling her to damages; and/or (ii) the information at issue is not subject to a cognizable privacy interest and does not render any alleged enrichment unjust; and/or (iii) Rodriguez consented to the alleged collection and disclosure of the information at issue; and/or (iv) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

## COUNT EIGHT

## Declaratory Relief: No Liability for Negligence

69. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

70. There is an actual controversy between the parties in this case and a declaration of the rights of the parties would terminate the controversy or some part thereof. Specifically, there exists a substantial controversy between Plaintiff and

Defendant as to whether Plaintiff is liable and owes Defendant damages for negligence.

71. HBH seeks a judicial declaration and determination that HBH is not liable to Rodriguez for negligence. In particular, HBH is not liable to Rodriguez for negligence because (i) Rodriguez has not suffered a cognizable injury entitling her to damages; and/or (ii) HBH did not have a duty toward Rodriguez; and/or (iii) to the extent that HBH had a duty toward Rodriguez, it did not breach such duty; and/or (iv) Rodriguez consented to the alleged collection and disclosure of the information at issue; and/or (v) to the extent that discovery shows that HBH did not disclose Rodriguez's data to third parties, there can be no liability.

**COUNT NINE**

**Injunctive Relief**

72. HBH incorporates herein, as though set forth in full, each and every allegation contained in the preceding paragraphs.

73. Rodriguez should be enjoined from prosecuting the Arbitration because she and HBH did not enter into an arbitration agreement and HBH did not agree to arbitrate Rodriguez's claims.

74. HBH has no adequate remedy at law because, among other things, Rodriguez's actions will (i) force HBH to undergo an arbitration proceeding to which it did not agree and which it opposes, and (ii) threaten to prejudice HBH's legal rights.

75. Unless Defendant is enjoined by the Court, Plaintiff will suffer irreparable harm by being deprived of its right to a judicial determination of Defendant's causes of action on the merits.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, by and through its attorneys, respectfully requests:

1. A declaration that:

///

a. No agreement to arbitrate was formed between HBH and Rodriguez;

b. JAMS does not have jurisdiction over Rodriguez's claims against HBH, and HBH will not be bound by any order or award issued in the Arbitration.

c. Rodriguez has not suffered a particularized, concrete injury, and therefore is not entitled to legal remedies for any of the causes of action in the Arbitration Demand.

d. Rodriguez voluntarily provided the information at issue to HBH.

e. Rodriguez consented to the recording and disclosure of the information at issue.

f. HBH is not liable to Rodriguez for violations of the ECPA.

g. HBH is not liable to Rodriguez for violations of CIPA.

h. HBH is not liable to Rodriguez for violations of the UCL.

i. HBH is not liable to Rodriguez for the tort of intrusion upon seclusion.

j. HBH is not liable to Rodriguez for unjust enrichment.

k. HBH is not liable to Rodriguez for negligence.

2. An injunction enjoining Rodriguez from proceeding with the Arbitration;

///

///

///

///

///

///

///

3. Such other and further relief as the Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

PADUANO & WEINTRAUB LLP

***/s/ Gene Williams***

Gene Williams, Esq. (SBN: 211390)
gw@pwlawyers.com
1901 Avenue of the Stars,
Los Angeles, California, 90067
Telephone: (310) 662-9200

Leonard Weintraub, Esq. (NY Bar No. 2161479)
(*Pro Hac Vice* application forthcoming)
E-Mail: lw@pwlawyers.com
Guilherme Duraes (NY Bar No. 5664420)
(*Pro Hac Vice* application forthcoming)
E-Mail: gd@pwlayers.com
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100

*Attorneys for Plaintiff*
*THE HONEY BAKED COMPANY, LLC*

# EXHIBIT 1

April 13, 2026

**VIA MAIL**

Judicial Arbitration and Mediation Services
620 8th Avenue, 34th Floor
New York, NY 10018

The Honey Baked Ham Company, LLC
3875 Mansell Rd
Alpharetta, GA 30022

***Re: Demand For Individual Arbitration Concerning Honey Baked Ham's Violations of Federal and State Wiretapping Statutes***

To Whom It May Concern,

This arbitration demand is submitted on behalf of Amy Rodriguez ("Claimant") against The Honey Baked Ham Company, LLC, along with its parents, affiliates, and subsidiaries (collectively, "Respondent"), pursuant to the Website Terms and Conditions ("Terms") governing the use of the website honeybaked.com (the "Website"). This dispute arises from Respondent's violation of Claimant's legally protected interests in safeguarding the confidentiality of their sensitive personal and financial information, as well as the fundamental right to conduct personal affairs without unwarranted observation, intrusion, or interference—i.e. Claimant's "right to be let alone."[13]

As described below, Respondent procured nonparties TikTok Inc. ("TikTok"), as well as Meta, Google, Yahoo, Pinterest, LinkedIn, Spotify and Bing (collectively "the Technology Companies") to monitor and record the activities of individuals who visited Respondent's website. To facilitate this surveillance, Respondent embedded TikTok's pixel and the other Technology Companies' tracking technologies (collectively, the "Pixels") into its Website's source code, which automatically deploys upon a user's access to the site. These codes operate as eavesdropping devices, intercepting and recording a range of user interactions. Respondent is liable for negligence, unjust enrichment, intrusion upon seclusion, and for violating the California Invasion of Privacy Act ("CIPA") and California Unfair Competition Law ("UCL").

While visiting Respondent's Website, Respondent used these tracking technologies to collect data from my device, including device identifiers, geographic information, IP addressing information, URL tracking, pages viewed, and buttons clicked. This data was sent to TikTok Inc., Meta, and other third parties without my knowledge or consent, in direction violation of state laws. Respondent not only enabled this invasive data collection but also used and disclosed the contents of Claimant's communications for its own commercial gain.

Respondent neither sought nor obtained any form of consent—express or implied—from Claimant for the interception of their electronic communications via the Pixels, nor for the disclosure or use of the contents of those communications.

This conduct constitutes a violation of Claimant's privacy rights and federal and state anti-wiretapping laws, including but not limited to: Electronic Communications Privacy Act, (codified at 18 U.S.C. § 2510 *et seq.*), California Invasion of Privacy Act, CA Penal Code § 638.51 and California Unfair Compeition Law, Business and Professions Code § 17200.

Claimant seeks relief for Respondent's violations of these federal and state privacy laws, and requests appropriate remedies, including statutory damages, injunctive relief, and attorney's fees.

---

[13] *See* Samuel Warren and Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890).

Claimant alleges as follows based on personal experience, on the investigation of counsel and the advice and consultation of third-party agents as to technical matters, and on information and belief as to all other matters:

# I. THE PARTIES

## A. Claimant

Claimant is a resident of Oceanside, CA, visited Respondent's website, and provided Respondent with PII and SPI. Claimant did not consent, agree, authorize, or otherwise permit Respondent's interception, use, or disclosure of their information.

## B. Respondent The Honey Baked Ham Company, LLC

Respondent The Honey Baked Ham Company, LLC is a privately held U.S. food retail company specizling in pre-cooked meats and related products. Respondent is incorporated under the laws of Delaware with its principal place of business in Georgia. Respondent embedded the Pixels into its Website to conduct real-time surveillance of website visitors, intercepting their electronic communications, including those of Claimant. This technology was used for commercial gain, enabling Respondent to gather valuable data at the expense of users' privacy, all without their knowledge or consent.

# II. ARBITRATION AGREEMENT

Respondent's Website Terms of Use mandate arbitration for resolving disputes. The relevant arbitration clause states:

> **Mandatory Binding Individual Arbitration**
>
> You and Company agree that any dispute, controversy or claim arising out of or relating to the Terms of Use or your access to and use of the System or the Services, including the determination of the scope or applicability of this agreement to arbitrate, regardless of the date of accrual of such dispute, be resolved in its entirety by individual (not classwide or collective) binding arbitration, except that you or Company (or the Franchisee) may take claims to small claims court if they qualify for hearing by such a court. You also agree that this Arbitration Agreement and Class Action Waiver shall apply to any dispute with other parties arising out of or relating to the Terms of Use or your access to and use of the System or the Services, including the determination of the scope or applicability of this agreement to arbitrate, regardless of the date of accrual of such dispute, except that you or any such third parties may take claims to small court if they qualify for hearing by such a court.
>
> YOU AND COMPANY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING AND THAT ANY ARBITRATION UNDER THIS AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS AND THAT CLASS, MASS, CONSOLIDATED OR COMBINED ACTIONS OR ARBITRATIONS OR PROCEEDINGS AS A PRIVATE ATTORNEY ARE NOT PERMITTED.
>
> Arbitration shall be conducted by JAMS in accordance with its Streamlined Arbitration Rules and Procedures, including the JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness, (the "JAMS Rules"). The JAMS Rules and instructions for how to initiate an arbitration are available from JAMS at http://www.jamsadr.com or 1-800-352-5267. To begin an arbitration proceeding against Company, you must serve The Honey Baked Ham Company, LLC's registered agent for service of process at 289 S Culver St, Lawrenceville, GA, 30046-4805, USA.

## III. STATEMENT OF CLAIMANT'S COMPLIANCE WITH PRE-ARBITRATION REQUIREMENTS

Claimant has complied with all pre-arbitration requirements stipulated in Respondent's Terms and is now seeking resolution through the JAMS arbitration process.

## IV. OVERVIEW OF APPLICABLE FEDERAL AND STATE ANTI-WIRETAPPING LAWS

### A. Federal Statutory Protections Against Unlawful Interception, Disclosure, and Use of Electronic Communications under the ECPA.

Title I of the Electronic Communications Privacy Act (ECPA), commonly referred to as the Wiretap Act 18 U.S.C. §§ 2510–2523, serves as the primary federal statute safeguarding the privacy of electronic communications. The ECPA provides a private right of action against anyone who intentionally intercepts, attempts to intercept, or procures another person to intercept any wire, oral, or electronic communication. 18 U.S.C. §§ 2511(1)(a), 2520.[14]

Under the ECPA, an "electronic communication" is defined, with certain exceptions, as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo optical system … that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). The term "intercept" is broadly defined under section 2510(4) to mean the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Content", in turn, refers to "information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

Additionally, 18 U.S.C. § 2511(1)(c) and (d) make it unlawful for any person to intentionally disclose or attempt to disclose to another person, or to use or endeavor to use, the contents of a wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through unlawful interception. These provisions recognize that the harm to privacy caused by interception is not confined to the initial act of intrusion and is compounded when the intercepted information is disclosed or used. Accordingly, the ECPA aims to prevent further violations by prohibiting both the disclosure and use of unlawfully intercepted communications, ensuring that those who benefit from such communications are held accountable.

Individuals whose communications were intercepted, disclosed, or used in violation of the Wiretap Act may pursue a private right of action under 18 U.S.C. § 2520(a). In doing so, they may recover statutory damages of either $100 per day for each day the violation occurred or $10,000, whichever is greater. Additionally, they may seek actual damages, including any profits derived by the violator, as well as punitive damages, reasonable attorney's fees, and other costs associated with the litigation. 18 U.S.C. § 2520(a).

### B. State Statutory Protections Against Unlawful Interception

While many states have enacted statutes that closely mirror the federal Wiretap Act by prohibiting unauthorized wiretapping and establishing similar elements for a cause of action, twelve states provide heightened privacy protections by requiring all-party consent for the interception or recording of communications. One of those is California. Under this stricter all-party consent standard, a communication cannot be lawfully intercepted or recorded unless all participants expressly consent.

California Penal Code § 632 further prohibits the use of any "electronic amplifying or recording device to eavesdrop upon or record" a confidential communication without the consent of all parties involved. Statutory damages of $5,000 per violation or three times the actual damages sustained by the Claimant, whichever is greater; actual damages not required as a prerequisite to bring a claim (Cal. Penal Code § 637.2).

These enhanced protections emphasize the commitment to individual privacy across these jurisdictions.

---

[14] Importantly, section 2511(1)(a)'s language is designed to target both direct acts of interception and situations where a person engages, induces, or assists, another to intercept communications on their behalf. Thus, liability also extends to any person who procures another to engage in such unlawful conduct, thereby encompassing indirect actors in the interception process.

## V. STATEMENT OF FACTS

### A. Claimant's Visit to the Website

Claimant Amy Rodriguez cvisited Respondent's website from their home state. During the visit, information about which pages Claimant visited, and every action they took was collected by the Pixels. At the time Claimant provided this information, Claimant had a reasonable expectation that Respondent would use the information solely for the limited purpose of completing the transaction and would maintain its confidentiality.

Unbeknownst to Claimant, however, the Pixels, which Respondent had embedded on the Website, were actively monitoring, recording, and transmitting Claimant's electronic communications in real time to the Technology Companies.

### B. The Pixels Function as Wiretapping or Eavesdropping Devices Under Federal and State Anti-Wiretapping Laws

Upon information and belief, Respondent entered into an agreement with the Technology Companies, third-party providers of tracking technology and user behavior analytics, to monitor and record website visitors' activities on Respondent's website via the TikTok Pixel, Meta Pixel, Google Pixel, Pinterest Pixel, LinkedIn Pixel, Spotify Pixel, Yahoo Pixel, and Bing Pixel. Respondent configured and embedded the Pixels on its website, enabling the Technology Companies to monitor, record, collect, store, and analyze users' electronic communications for the benefit of both Respondent and the Technology Companies.

The Pixels are software tools that Respondent and other clients embed within their websites to intercept and eavesdrop on users' electronic communications for the purpose of harvesting data for commercial gain. These tracking codes work by embedding JavaScript directly into the website's source code, which automatically executes within the user's browser upon accessing the site. Once executed, the codes monitor and record various user interactions, including keystrokes (such as data entered into form fields), mouse clicks, movements, scrolling activity, page navigation, and form submissions. Additionally, the Pixels capture session metadata (e.g., browser type, operating system, session IDs) and network communications (e.g., HTTP requests made while navigating the website).

The Pixels embedded on Respondent's website not only capture user data but contemporaneously transmit it to the Technology Company's servers for continuous analysis and storage. Consequently, the interception occurs contemporaneously with the transmission of the communication, capturing the communication while still in transit.

Respondent and the Technology Companies use the intercepted communications, including their contents, to harvest user data. The Technology Companies retain the ability to use the intercepted communications, including their contents, for their own purposes, including enhancing their products and services.

### C. Respondent's Use of the TikTok Pixel Violates California Penal Code § 638.51

The TikTok Pixel is a piece of Javascript code created by Tiktok that is embedded on non-TikTok websites (such as honeybaked.com) that allows websites to "share website events with Tiktok."[15] The TikTok Pixel source code is written by TikTok and is served by TikTok's servers. In all cases, user interaction with a website employing the TikTok pixel transmits the following information to TikTok's servers via the Pixel: a timestamp, IP address, user agent, URLs, and cookies.

During the relevant time period, TikTok was owned by ByteDance, Ltd. ("ByteDance"). ByteDance is supervised by certain members of the Chinese Communist Party – a foreign adversary – and makes user data, including data of U.S. citizens in its database, accessible to the Chinese Communist Party. *See generally TikTok Inc., et al. v. Merrick Garland*, No. 24-1113 (D.C. Cir. 2024); *see also* No TikTok on Government Devices Act, Pub. L. No. 117-328, div. R, 136 Stat. 5258 (2022) (requiring removal of TikTok on all government devices); Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H, 138 Stat. 955 (2024) (requiring TikTok to be divested from ByteDance or cease operations within the United States).

---

[15] TikTok, "How to Set Up and Verify TikTok Web Data Connection," https://ads.tiktok.com/help/article/get-started-pixel.

According to the United States Department of Commerce, ByteDance is "'building massive databases of Americans' personal information' to help the 'Chinese government to further its intelligence-gathering and to understand more about who to target for espionage, whether electronically or via human recruitment.'" *TikTok v. Trump*, No. 20-02658, ECF No. 60 at 6 (D.C. December 7, 2020). The Department of Justice has confirmed that this information gathering, including IP address information, is used by ByteDance employees and members of the Chinese Communist Party, to monitor the physical locations of U.S. citizens. *TikTok Inc., et al. v. Merrick Garland*, No. 24-1113, ECF No. 2066896 (Public Redacted Brief of Respondent Merrick Garland, as Attorney General of the United States). The data collected by the TikTok Pixel on Respondent's Website – including Claimant's personal IP addressing information and other location information – is part of this data. Respondent did not obtain a cort order nor my consent to share my data with TikTok via the TikTok Pixel.

California Penal Code § 638.51 prohibits the use of any technology that captures information about the source or destination of electronic communications without proper consent. Under California Penal Code § 637.2, individuals harmed by such violations are entitled to the greater of $5,000 per violation or three times the amount of actual damages, plus injunctive or equitable relief. *See Shah v. Fandom, Inc.*, No. 24-01062, 2024 WL 4539577, at *3 (N.D. Cal. October 21, 2024) ("[T]he IP addresses collected by the Trackers fall within the statutory definition of 'addressing' information."); *Moody v. C2 Educ. Sys. Inc.*, 742 F.Supp.3d 1072, 1077 (C.D. Cal. 2024) (holding that plaintiff pleaded a valid claim that "TikTok Software" constituted a pen register); *accord Zarif v. Hwareh.com, Inc., Defendant.,* No. 23-cv-0565, 2025 Wl 486317, at *12 (S.D. Cal. Feb. 13, 2025) (agreeing that the "Meta Pixel and similar tracking software" are pen registers).

### D. Respondent's Role in Procuring TikTok's Interception

Respondent did not passively or inadvertently permit the Technology Companies to intercept, transmit, and use user data; rather, it took deliberate actions to procure, implement, and integrate the Pixels, demonstrating a clear intent to conduct real-time surveillance on Website visitors. As the owner and operator of the Website, Respondent exercised full control over its design, structure, and functionality, including the intentional decision to implement and configure the Pixels. The embedding and activation of these codes required careful planning, internal approval, and coordinated execution by Respondent's employees or agents, highlighting Respondent's purposeful and active role in intercepting, disclosing, and using Claimants' communications. Moreover, as a sophisticated commercial entity, Respondent knew or should have reasonably known that the Pixels would intercept real-time electronic communications between Website users and Respondent's servers. By intentionally embedding and configuring the Pixels into its Website, Respondent actively facilitated and directed the unlawful interception and transmission of Claimants' communications, in violation of federal and state wiretap laws.

### E. Lack of Informed Consent

Respondent neither sought nor obtained any form of consent—express or implied—from Claimant for the interception of their electronic communications via the Pixels, nor for the disclosure or use of the contents of those communications. At no time during Claimant's interaction with Respondent's Website was Claimant informed of the presence of the Technology Companies, their Pixels, or the use of tracking technology through any clear or conspicuous disclosure. Respondent's Privacy Policy and Terms and Conditions failed to disclose the use of this invasive tracking technology, leaving users unaware of how their data was being collected, processed, or shared. Consequently, any purported consent was neither informed nor valid.

## VI. RELIEF SOUGHT

By licensing and integrating the Technology Companies' wiretapping and eavesdropping code into its Website, Respondent procured, aided, agreed with, and employed an unknown, unannounced third party to intercept Claimant's electronic communications.

As a result of Respondent's conduct, Claimant has suffered an invasion of privacy and a loss of control over their personal information. Claimant seeks all appropriate legal remedies, including statutory damages, injunctive relief, attorney's fees, and any other relief the arbitrator deems just and proper.

Claimant respectfully requests that the arbitrator grant the following relief:

a) **Declaratory Relief**: An order declaring that Respondent's conduct, as described herein, violates federal and state law.

b) **Injunctive Relief**: An injunction to prevent Respondent from continuing the practices without proper disclosure and user consent.

c) **Compensatory Damages**: Compensatory damages, in an amount to be determined at arbitration, to compensate Claimant for violation of their reasonable expectation of privacy.

d) **Statutory Damages**: Claimant seeks maximum statutory damages as provided by federal and their home state's law for each violation committed by Respondent:

e) **Punitive Damages**: Punitive damages, in an amount to be determined at arbitration, to deter Respondent from engaging in similar unlawful conduct in the future.

f) **Reimbursement of All Costs Associated with Arbitration**, including any filing, administrative, and arbitrator fees or costs.

g) **Attorneys' Fees and Costs**: Recovery of reasonable attorneys' fees and costs incurred in bringing this arbitration demand and pursuing arbitration.

h) **Interest**: Prejudgment interest on all amounts awarded.

i) **Other Relief**: Any other relief that the arbitrator deems just and proper to compensate Claimant and to rectify Respondent's unlawful conduct.

Claimant expressly reserves the right to amend this Demand for Arbitration to include additional claims, causes of action, or parties as further information becomes available during the course of this proceeding, and in accordance with the applicable rules.

## VII. REQUESTED VENUE

Claimant requests a telephonic hearing.

Respectfully submitted on behalf of Claimant,

**BRYSON HARRIS SUCIU & DEMAY, PLLC**
J. Hunter Bryson
11 Park Place, 3rd Floor
New York, NY 10007
Hbryson@brysonpllc.com

*Attorney for Claimant*

# EXHIBIT 2

# PRIVACY POLICY

The Honey Baked Ham Company, LLC (together with our affiliates, "we," "us," and "our") respects the privacy of your personal information. We are committed to complying with this privacy policy ("Privacy Policy"), which describes what information we collect about you and others, including how we collect it, how we use it, with whom we may share it and what choices you have regarding our use of your information. This Privacy Policy is not a contract but rather provides our notice to you of our privacy practices. To learn more about privacy rules specific to your state of residence, please also see the section below called "State-specific Privacy Information."

This Privacy Policy applies to information collected on our website located at https://www.honeybaked.com, our mobile app or any other mobile or online offering that we control that links to this Privacy Policy (collectively, the "Website"), in the brick-and-mortar stores that we operate, through our call center, and otherwise when you contact us.

The term "Personal Information," as used in this Privacy Policy, means information that relates to or is reasonably capable of being associated with an individual.

**1. What Personal Information We Collect**

We collect Personal Information that you voluntarily provide to us through the Website, when you order our products, and when you make purchases at our brick-and-mortar stores. This includes but may not be limited to your first and last names, company name, email address and password, mailing address, phone number, demographic information, purchase history, geolocation information (on our app, we'll only collect this with your permission and to provide services), and payment information. We may use third-party providers to update and correct your Personal Information to ensure that your Personal Information that we store is accurate and complete. We may also collect and confirm Personal Information when you contact us by email or telephone. This allows us to protect your confidentiality by verifying your identity. If you are a recipient of one of our products, we collect your name and delivery address, as provided to us by the person who ordered the product.

We also automatically collect certain technical information from your electronic device when you access the Website, as further described below.

**Purchasing Our Products And Registering On Our Website**

When you make a purchase using a payment card, we collect Personal Information for processing and shipping your order, including your name, address, phone number, and payment card information, and the name, address and phone number of your intended recipient. When you become a registered user of our Website, you may be able to choose to save your billing information and shipping information as part of your account. You can view or change your account information at any time by logging in with your email address and password, or by emailing our Customer Service.

**Cookies**

When you access the Website, we and our third-party providers may place files known as "cookies" on your device, along with similar industry standard technologies like pixels or java scripts, to serve ads and/or collect data, including Personal Information, across the Internet and sometimes on our Website. Some cookies allow us and our third-party providers to store your preferences, including your selected U.S. state of residence, and including, but not limited to log-in information, and ordering and shipping information. Please keep in mind that some cookies may persist after you have logged into your account on the Website. Other cookies allow us and our third-party providers to passively gather certain information about your use of our Website, which may include gathering information for the following purposes: statistics collection and analysis, Website optimization, analytics (as described below), and market research. We and our third-party providers may collect Personal Information that may include your Internet Protocol (IP) address, the operating system type used by your electronic device, browser type, user agent, email address (where hashed or otherwise rendered pseudonymous) and other user and device level pseudonymous information, and the address of a referring website, if any. Some of these service providers may be able to collect Personal Information that you share with this Website via a web form automatically and prior to your pressing a submit button; and they may be able to use information from your visits to this Website to send marketing messages to you in a way that may personally identify you. Our providers may do this even if you're not logged into your account. If you would like more information about these practices, please click: http://optout.aboutads.info/#!/. We collect this Personal Information to improve the quality of your visit to our Website, for security purposes, including for authentication, to facilitate Website navigation and to personalize your experience while visiting the Website.

If you choose not to accept certain cookies, you may not have access to certain features of our Website. Your browser may be configured to reject cookies or notify you when a cookie is set.

Your browser settings may not permit you to control the technologies utilized by these third-party companies.

**Google Analytics**

The Website may use Google Analytics, a web analysis service provided by Google, in order to better understand your use of our Website and how we can improve it. Google Analytics collects Personal Information such as how often users visit a website, what pages you visit when you do so, and what other websites you used prior to coming to such website. Google Analytics collects only the IP address assigned to you on the date you visit a website, rather than your name or other identifying information. We do not combine the information collected through the use of Google Analytics with your Personal Information. Although Google Analytics plants a permanent cookie on your web browser to identify you as a unique user the next time you visit a website, the cookie cannot be used by anyone but Google. Google's ability to use and share information collected by Google Analytics about your visits to the Website is restricted by the Google Analytics Terms of Service and the Google Privacy Policy. Google utilizes the informationcollected to track and examine the use of the Website, to prepare reports on its activities and share them with other Google services. To more fully understand how Google may use the information it collects on the Website, please review "How Google uses information from sites or apps that use our services" (located here).

**Web Beacons**

Some of the areas of the Website may contain electronic images known as web beacons (sometimes known as clear gifs) that allow us, and our third-party providers or affiliates, to count and track users who have visited certain portions of the Website. Web beacons collect only limited information and do not collect any of your Personal Information. Specifically, we plan to use a type of web beacon known as a "retargeting pixel," which will allow users to receive targeted advertising from us via certain social media sites, including Facebook.com.

The Website may use Meta Pixel. Meta Pixel is an analytics tool that allows us to measure the effectiveness of our advertising by understanding the actions you take on our Website. In this way, we can tailor our marketing to better suit your needs and only display ads that are relevant to you. According to the "How do we use your information?" section of Meta's Privacy Policy, Meta may use information from the Meta pixel to provide a personalized experience to you, including ads, as well as for other purposes such as: promoting safety, security, and integrity; providing measurement, analytics, and business services; communicating with you; and researching and innovating for social good. For some purposes, Meta uses information across its products and across your devices. If you would like to opt-out of the Pixel, go to "Activity Off Meta Technologies" in the Settings section of any of your Facebook or Instagram accounts or by visiting the Facebook Help Center. You may also opt-out on our Website by setting a browser-level opt-out, the Global Privacy Control or through the cookie control tools available in our Website footer.

**2. How We Use Your Personal Information**

We and our third-party providers may collect and use Personal Information to operate the Website and deliver products, including to provide certain services and improve the user experience, help you find a store, address Website integrity or security issues, conduct research and analysis to maintain, protect, develop, improve and market our products, services, and the Website, and for any other lawful purposes.

We may also use your Personal Information to send you push notifications, promotional materials and administer our rewards program(s).

Additionally, we may retain and use Personal Information to facilitate and otherwise address inquiries or requests regarding the Website or our products, or respond to your questions or requests for information about or from us. We may also use Personal Information as necessary to ensure compliance with any of our policies and any applicable legal requirements.

We may aggregate your information, without identifying you personally, to obtain statistical and demographic background on our customers.

We retain the Personal Information that we collect to achieve the purposes for which the Personal Information was collected. In certain cases, we may need to retain Personal Information for purposes required under applicable law, for tax, accounting, or audit purposes, or for other purposes permitted or required under law. If you would like you information deleted or to withdraw any consent that you provided us in the past, please email us at customerdata@honeybaked.com.

**3. How We Share Your Personal Information**

We may share all of the categories of your Personal Information that we collect as permitted or required by applicable legal requirements. We engage third-party providers who may collect or receive your Personal Information on our behalf, and we require such third parties to comply with the same or similar standards that we apply to protect Personal Information. Such third-party providers perform functions such as payment processing, operating and supporting the Website, analyzing data, or performing marketing or consulting services.

We may also disclose Personal Information if we become subject to a subpoena or court order, or if we are otherwise legally required to disclose such information. We may also use and disclose Personal Information to exercise our legal rights, or to take action regarding actual or suspected illegal or fraudulent activities or potential threats.

As we grow and develop our business, our corporate structure or organization might change, we may merge or otherwise combine with, or we or portions of our business might be acquired by, another company. In any such transactions, Personal Information generally is, and should be expected to be, one of the transferred business assets. Also, if any bankruptcy or reorganization proceeding is brought by or against us, your Personal Information may be considered a company asset that may be sold or transferred to third parties.

**4. State-specific Privacy Information**

**For California Residents Only**

This portion of our Privacy Policy advises California residents of rights provided in the California Consumer Privacy Act (the **"CCPA"**) and how to exercise those rights.

In the past 12 months, we have collected the following categories of Personal Information as necessary to operate our business, to comply with our legal and regulatory obligations, and to provide our services to you:

- Identifiers such as a real name, postal address, IP address, and email address.
- Bank account number, credit card number, debit card number, or any other financial information.
- Products or services purchased or considered.
- Geolocation data, including physical location.
- Internet or other similar network activity including browsing history, search history, information on a consumer's interaction with a websites, application, or advertisement.
- Professional or employment information such as company name.

We collect Personal Information from the following sources: directly from you, from observing your actions on our Websites, from third parties (including analytics providers).

We may also collect or process sensitive personal information as necessary to operate our business, to comply with our legal and regulatory obligations, and to provide our services to you.

We may collect the following types of sensitive personal information from you:

- Driver's license, state identification card, or passport number.
- Payment card number.
- Precise geolocation.

We may use your information for the following business purposes:

- To provide our services.
- Helping to ensure security and integrity to the extent the use of the consumer's Personal Information is reasonably necessary and proportionate for these purposes.
- Performing services on behalf of our customers, including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing financing, providing analytic services, providing storage, or providing similar services on behalf of the business.
- Supporting our advertising and marketing services as permitted by law.
- Undertaking internal research for technological development and analytics.
- To improve, upgrade, or enhance the services.

If you are a California resident, you may request certain information from or certain action by us, or you may authorize an agent to make such a request on your behalf. We will seek to verify your identity and your agent's authority when we receive an individual rights request from you or on your behalf to ensure the security of your Personal Information.

Please direct any rights requests (as further described below) or additional questions that you may have regarding this Privacy Policy to: 1-800-367-7720 or customerdata@honeybaked.com or 3875 Mansell Rd, Alpharetta, GA 30022, Attn: Customer Experience Team.

California residents have the right to request the deletion of Personal Information, but we may not delete some or all Personal Information, as required or permitted by applicable law. If you are a California resident, you may also request to receive details about how we collect, use, and share your Personal Information. You may also request to receive the specific pieces of Personal Information that we have collected about you and to correct your Personal Information.

We may allow certain third parties (such as online advertising services) to collect your Personal Information via automated technologies on our Website. We share the categories of Personal Information listed below for the business and commercial purposes of online advertising and to provide third-party social network features and functionality on our Website. Those third parties may use your Personal Information for optimization, to display cross-contextual advertising and to manage their own platforms. You have the right to opt-out of this disclosure of your information, which may be considered a "sale" or "sharing" under California law, as set forth below. You may opt-out of the sale or sharing of Personal Information collected through automated technologies on our Website by clicking on the Your Privacy Choices link or by setting the GPC signal.

| **Category of Personal Information** | **Category of Third Party** | **Business or Commercial Purpose** |
|---|---|---|
| Identifiers | Advertising networks, data analytics providers, social networks | Advertising and maintaining/offering our Website |
| Online Activity and Geolocation Data | Advertising networks, data analytics providers, social networks | Advertising and maintaining/offering our Website |

We do not knowingly sell or share the Personal Information of persons under 16 years of age.

Financial incentives, as defined under the CCPA, include offering a different price in exchange for the collection of Personal Information. We offer rewards to consumers who sign up for and voluntarily provide certain requested Personal Information to us in connection with our myHoneyBaked Rewards Program. You can find a full description of the program, including the benefits offered, and related legal terms, here.

You have the right to withdraw from myHoneyBaked Rewards at any time by calling us at 1-800-367-7720, or by emailing us at customercare@hbham.com.

In some instances, we may use or disclose certain Personal Information that we collect which constitutes "sensitive personal information" under the CCPA. We do not, however, use that information outside of certain limited uses, such as the following: (i) providing and improving our products; (ii) detecting security incidents; (iii) resisting malicious, deceptive, fraudulent, or illegal actions; (iv) ensuring physical safety; (v) for certain non-personalized advertising; (vi) maintaining or servicing accounts, providing customer service, or similar uses; and (vii) improving our services.

You will need to be enrolled in the rewards program (and voluntarily provide the Personal Information requested through each program) to receive certain benefits. In such circumstances, we offer a price difference that is reasonably related to the value of your Personal Information to us in connection with the program.

**Residents of Other US States**

**Your Privacy Rights**

This portion of our Privacy Policy describes the rights that may apply depending on your jurisdiction of residence and applies only to the extent of any inconsistency with the information above.

**Right to Confirm and Access.** You have the right to confirm whether we are processing your Personal Information and you have the right to access such Personal Information. You also have the right to request a list of specific third parties to whom we disclose Personal Information.

**Right to Correct.** You have the right to correct inaccuracies in your Personal Information, taking into account the nature of the Personal Information and the purposes of processing the Personal Information.

**Right to Delete.** You have the right to delete Personal Information provided by or obtained about you.

**Right to Obtain a Copy.** You have the right to obtain a copy of your Personal Information that you previously provided to us in a portable, and to the extent technically feasible, readily usable format that allows you to transmit the Personal Information to another data controller without hindrance.

**Right to Opt-Out.**You have the right to opt-out of the processing of your Personal Information for the following purposes: 1) targeted advertising, 2) the sale of your Personal Information, or 3) conducting profiling in furtherance of decisions that produce legal or similarly significant effects concerning you.

We do not "sell" your Personal Information as defined under certain state laws (not including California). Additionally, we do not use automated decision-making to produce legal or similarly significant effects concerning you.

You may opt-out of the processing of your Personal Information collected through automated technologies on our Website for the purpose of targeted advertising by clicking on the Your Privacy Choices link or by setting the GPC signal.

Subject to certain exceptions provided by law, we will get your opt-in consent prior to collecting sensitive personal information.

**Right to Appeal.** If we refuse to take action regarding your exercise of any of the rights described in this section, you may appeal our refusal to do so by contacting us as provided below.

You may authorize an agent to make such a request on your behalf, may exercise these rights by contacting us through the methods described in Section 13 below.

We will seek to verify your identity and your agent's authority when we receive an individual rights request from you or on your behalf to ensure the security of your Personal Information.

**5. Do Not Track**

Certain state laws require that we indicate whether we honor "Do Not Track" settings in your browser. We adhere to the standards set out in this Privacy Policy and do not monitor or follow any Do Not Track browser requests.

**6. Links And Embedded Content**

For your convenience, the Website may contain some hyperlinks and embedded content to or from other websites not under our control. We are not responsible for, and this Privacy Policy does not apply to, the privacy practices of those websites or of any companies that we do not own or control, including our unaffiliated licensees. We cannot be responsible for the privacy practices of any such websites or pages not under our control and we do not endorse any of these websites or pages, the services or products described or offered on such websites or pages, or any of the content or features contained on those websites or pages. We encourage you to seek out and read the privacy policy of each website that you visit and use.

**7. Promotional Correspondence**

We may send you emails with promotional offers. If you would no longer like to receive information, newsletters or other promotional messages from us, please click the link at the bottom of any such email you receive from us and follow the instructions, or alternatively you may contact us at customercare@hbham.com with the word "UNSUBSCRIBE" or "REMOVE" in the subject line.

**8. Sweepstakes**

We may offer certain online polls, surveys, contests, sweepstakes and other promotions from time to time. Participation in these polls, surveys, contests, sweepstakes and promotions is completely voluntary; you have a choice about whether or not to disclose information required to enter. Information requested may include Personal Information such as your name, address, date of birth, phone number, mobile phone number, e-mail address, username, and similar information. Subject to applicable legal restrictions, we also may use the Personal Information collected related to the promotions described in this section to communicate with you about our services or products.

**9. Job Applicants**

Any Personal Information you provide us when applying for a career position with us will be used solely to consider and act upon your application. We may retain your Personal Information for a period of time, but only for as long as necessary for such purposes. We may also disclose your Personal Information to third parties hired by us to collect, maintain, and analyze candidates for career positions.

**10. Children**

The Website is intended for a general audience and is not intended for use or view by children under 13 years of age, and we do not knowingly collect information about children or sell products to children.

**11. Changes to our Privacy Policy**

We may change this Privacy Policy at any time and from time to time. The most recent version of the Privacy Policy is reflected by the version date located at the bottom of this Privacy Policy.

**12. Website Security**

We take reasonable measures to secure and protect information transmitted via or stored on the Website or our other systems. Nevertheless, no security system is impenetrable. We cannot guarantee that information that users of the Website or our other systems may happen to transmit or otherwise supply will be totally secure.

Your account information is protected by the password you create on our Website. Please protect the confidentiality of that password and do not disclose it to any third parties.

**13. Contact Us**

We welcome your feedback and questions on our privacy policy. Please contact us at:

Phone: 1-800-367-7720

E-mail: customerdata@honeybaked.com

Postal address: 3875 Mansell Rd, Alpharetta, GA 30022

This Privacy Policy was updated on 12/05/2025.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the country of Los Angeles, State of California, I am over the age of 18 and not a party to the within action. My business address is 1901 Avenue of the Stars, Suite 1458, Los Angeles, CA 90067.

On August 31, 2026, I served the following document described as **PLAINTIFF THE HONEY BAKED HAM COMPANY, LLC'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** on all interested parties in this action by the following means.

**SEE ATTACHED SERVICE LIST**

☒ **(BY ELECTRONIC SERVICE)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent from e-mail address se@pwlawyers.com to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 31, 2026, in Los Angeles, California.

***/s/ Sylvia Esparza***

Sylvia Esparza

## SERVICE LIST

*The Honey Baked Ham Company, LLC v. Rodriguez*

**U.S. District Court for the Southern District of California Case No.:**

| | |
|---|---|
| J. Hunter Bryson, Esq.<br>Mark Rabin, Esq.<br>Bryson Harris Suciu & Demay, PLLC<br>11 Park Place, Third Floor<br>New York, NY 10007<br>hbryson@brysonpllc.com<br>mrabin@brysonpllc.com | ***Attorneys for Defendant***<br>*Amy Rodriguez* |